Kelly versus San Diego County Health and Human Services. Good morning. May it please the court. Wait a second, counsel. Yes. Mr. Michalowski, are you here? Mr. Michalowski got disconnected earlier, and I've just let him in. Thank you. All right, Ms. Kelley. Thank you. So I'm Sara Kelley, one of the plaintiffs, and I'm here representing myself and my wife, Teresa Smith. So three years later, I still have the same questions. What date did the placement end, and why did it end? Those create triable issues of material fact. I also have the question of why haven't more children been placed in our home? That, along with the 14th Amendment deprivation of due process, because I got no meaningful review before depriving me of my liberty when they made me take a class for speech, along with no prior notice of what speech was inappropriate based on the written directives being vague, exists independent of this child, teenager, in the complaint, his placement and removal, and those also create triable issues of material fact. I'm ready for your questions. Well, I've got one for you, ma'am. My concern as the trial judge here on this is when I have to allow folks to amend a petition and when I can just dismiss it. So as I understand it, the district court did not allow leave to amend, and obviously the eminence capital case seems to, and within the Ninth Circuit, govern that. Was the trial judge required to allow you to amend, and did you seek leave to amend? I believe that the trial judge was required to allow us to amend the complaint because one of the complaints or issues noted by the judge was that we hadn't submitted evidence contradicting the evidence that defendants had submitted. But the problem is that I actually need two WIC 827 protective orders based on the county's own policies. I need one for juvenile court records. I need a different protective order for their business records. So the evidence lies not just in the juvenile court record, but in the business records, which includes like the emails, the allegations themselves, the complaint, the allegations that led me to have to take a class that used the word deficiency and gay. Those things lie in the business records of the county. And so I was prevented from providing evidence because of the rules and laws unique to the dependency stuff, which I assumed I would be able to do once we got to the discovery phase. So counsel, this is a complaint. Yes. And we're at the level of a motion to dismiss. We don't have an answer filed yet. And this isn't a stage where you need to put on any evidence. You're supposed to describe your claims in a way that's actually state a claim for a cause of a claim, a cognizable claim. And the district court found that none of the claims you asserted was cognizable and decided that on different grounds for each of your claims. So perhaps we should take this claim by claim and I think that might be one way to address this. Let's see, what was the first claim here? And I gather the district court also took judicial notice of various state court, state proceedings, correct? Yes. So the problem with that is the district court and defendants have relied on state court proceedings that don't apply to any of the causes of action. So the appeal is irrelevant to this case. I'm not asking anyone to overturn taking ed rights or de facto rights. Challenging the removal required a writ, an extraordinary writ, not an appeal. Our claim- Let me ask you a question about the appeal though. And maybe this was a gratuitous comment by the court of appeals, but the court of appeals says in a footnote, we find no evidence that any of the actions relating to teenager were motivated by the sexual orientation of the foster parents. Maybe that wasn't that issue, but it makes me think it must've been, you must've argued that to the court of appeal. So here's how this arose. So regarding the sexual orientation. So they said, for the issues in this case, right? Which was ed rights and de facto. That helps me. So with respect to the removal of the child, which were the issues in that case, you agree that the county's actions were not motivated by discrimination based on sexual orientation? No, not for the removal, for taking ed rights and de facto rights. Well, let me ask the question differently. And one of the problems in this case is that we do have state court proceedings and we do have judicial notice taken of some of the things there. Is there any contest in this case that the teenager on the day in question, I hate to use that term, but it sounds like a lawyer on the day in question, said to the social worker, I don't want to be in this place anymore or words to that effect? Yes, I believe that there is an issue with that because if he had wanted to leave permanently, he wouldn't have just asked to go to his friend's house. Well, that's not the question I'm asking. I'm not asking whether he said that day, I want to be removed permanently. The question, because I have a follow-up question. Is there any contest that he said that day, I don't want to be here or words to that effect? I have a problem answering that because there needs to be more context. Wait, if you can't answer it, you can't answer it. So my next question is, is there any dispute in this case that the teenager did not want to consent to adoption by you and your spouse? Absolutely. That is definitely a point of contention. He never said that he didn't want to be adopted or not stay in our home because we were gay. He never said that. Forget the reason for a moment. My problem is we go through the juvenile court proceedings and there's never anything in the record suggesting that the teenager either wants to return or would consent to adoption. And as I read the California statutes, his consent would be necessary to adoption. And as I read them, his preferences about where to be in a purely foster home are relevant. And so I'm trying to figure out if that's true, if he didn't want to consent to adoption and they didn't want to return, how you were deprived of any rights by the state removing it. I wasn't deprived by the state removing him. I was deprived by the county removing him without talking to the- The county is an agency of the state. Okay, all right. I thought you meant like the court was, I thought that's what you meant. No, the problem is that the reason matters because we weren't even given a chance to talk to anyone about this. She just swooped him up and put him in our, like a respite. You may have a state court right to a hearing, but I'm having a hard time figuring out what your federal constitutional right is to know. You don't have a property interest here. You don't have a liberty interest with respect to keeping the child in your home. So I don't, I'm trying to figure out what the federal constitutional deprivation is from, as you say, swooping him up. Okay, so insofar as any prospective adoptive parents have ever been given the right to adopt, it would be gays and lesbians based on the decisions in Oberfeld and Pavin. But Oberfeld doesn't say you have a, Oberfeld doesn't say that a foster parent has a property right or a liberty right to adopt. So I'm trying, state law determines property rights. A particular child too, and there's an extensive state statutory scheme and I think the district court relied on this in particular that the final decision, I mean, rests on the teenager's consent to this adoption. And it doesn't, I mean, I don't think the law can be that you have a federal constitutional right to adopt a particular teenager against his will. And that's what he's arguing. But if he was under a certain age, then it wouldn't have been an issue. Right, that he wasn't. But why does the state law get to override the rights we have under federal? Because there's no federal constitutional right to adopt a particular child. Okay. You may have the right not to be discriminated against in the adoption of a child. There we go. This particular child, you were merely the foster parents trying to adopt. I was prospective adoptive parents, which is higher level. Prospective adopt, whatever you call it. That's not a property right. It's not a liberty right. It's just a state statutory preference. Okay. And so what we're trying to figure out is what constitutional right you were deprived of because they removed the child. Put aside the equal protection claim for a moment. I want to get back. Okay. Just in terms of removal, hearing, notice, et cetera, what constitutional right were you deprived of when the child was removed? Basically just the right to due process and meaningful access to the courts before. But I understand the underlying point, right? That basically, if I don't have the final right to him, and that's based on state and the notice and the procedures regarding removal is a state law, not a federal constitutional right. I understand that. That's right. And you add to that, part of the statute says you don't even have a right to a hearing if the child is at risk of physical or emotional harm. For sure. Yes. That wasn't actually, that's part of my problem. He wasn't. Well- But that you can't challenge. That's what the state procedure- Yeah, yeah, yeah. And that's fine. That's fine. What I'm saying is that those statements were the judicial deception claims. My larger concern is not necessarily the removal itself. Okay. So like, I'd rather spend my time moving on. It's the retaliation claim and the continued and ongoing retaliation. Let's talk about retaliation in your complaint. Because, okay. What do you claim the agency was retaliating against you and your partner for? Speaking in court on March 5th, me not telling, agreeing with the social worker not to talk about sexual orientation and adoption in my home, retaliation for asking about the teenagers whereabouts in return to my home, retaliation for the statements I made in my declaration, retaliation for challenging the taking of de facto internet rights, retaliation for challenging- Can you tell me what the retaliation is? In other words, the retaliation, except for the statement made in the court proceeding, put that aside for a second. All the other things occurred after the child was removed. So the removal couldn't have been in retaliation for your statements, correct? Well, no. The fact that she asked me to say those things, I said, no, and then she took the child. Oh, she took the child. The child was taken. She said right away, we're going to put him in someplace else for a day or two. And in the meantime, don't talk about this stuff. So he wasn't removed because of your refusal to do that. He was removed because he wanted to be removed, right? He may not have wanted to be permanently removed. That's a separate issue. But the initial removal was at his request, was it not? Sure. Okay, so what, how was the, let's assume for a moment that the removal wasn't in retaliation for statements that came after the social worker was contacted. How were you retaliated against with respect to those statements then? So the making me take a class, like literally sitting in class, depriving me of my liberty without a meaningful review of the allegations, because speaking to, you know, basically only getting to, you know, ask for review by speaking to a supervisor is not a meaningful review before depriving me of my due process right to liberty. Your claim is that making you go to class is a constitutional deprivation. Okay, what's your other retaliation claim? That they refuse to place any other children in our home. Okay, have they refused to do that or just not done it? Oh, they've refused to do it. And actually I was recently informed that because of this particular case, because I'm suing the county, they're not ever gonna place kids in my home. Well, I guess that was, I'm getting to, that wasn't in the complaint, but. Well, because it was after, right? They continue to retaliate. I understand, I understand. But is, wouldn't that, why isn't that a valid reason? We're not gonna make any placements while we're still fighting about this one. Because what about the year before I filed anything? From June, you know, 2018 after teenager was removed, let's say after I took the class, you know, let's say October, I took the class, my license hold is hold back off, you know, the hold is released. So my home is eligible for placements, right? So from October, 2018 to the time I filed the suit in 2019, no placements. Well, that's what I was trying to focus on. Is it, why would I think it's plausible that the failure to place any children for that time period was in retaliation? Do I know that they're regularly placed every month when somebody asks for it? Oh, you don't have to ask. There's hundreds of kids sitting at Polinsky Center. They're supposed to be placed in the least restrictive thing. I would go to meetings and they'd say, hey, anyone who has a bed in your home open, we have hundreds of kids that need placements right now. We had a license, children two to 18, totally good to go. None of this is in the complaint. And as for the class, I guess we'll have to hear from the agency, but I assume you agreed to certain conditions when you took this placement, right? No. Well, you agreed that you would abide by the agency's rules for foster children. But there's no place that says that using the word gay inappropriately. No, I'm not suggesting that. I mean, I'm suggesting that maybe taking a class is part of, I don't know, it's not in your complaint, but I would assume that you don't, the agency doesn't just place a child without having some guidelines or- And directives. And directives and things that you must do. For example, if there's problems in the home, it's probably preferable to go to a class that addresses problems than to yank the child. Yes. And I'm suggesting that maybe that was something that was constructive, not retaliatory. Possibly you consented to. I mean, you were free not to go to the class. But then the whole point of it released. You were sentenced to the class and taken there by the sheriffs. Going to the class was a condition that they had for you continuing in the program. So I have a hard time seeing this being as implicating a liberty interest. I understand that if you were sent to jail and forced to take a class, but you could have said no and you wouldn't have participated in their programs. I don't see a liberty interest implicated by being forced to take a class. But how would I have gotten the whole released if? Well, that's a separate issue. I mean, what you're saying is that you were deprived of your liberty in violation of the constitution because the state said, if you want to continue in our program or the county, I'm sorry, we want you to take a class. And I've never seen a deprivation of liberty claim that arose out of being required to take some instruction as a condition for remaining in a state program. It's hard to see that as an unconstitutional condition. But it was in retaliation for speech that I was required to take it. Okay, let me rephrase this. Let me rephrase this. The liberty interest, I just have a hard time finding. Let me rephrase this a little bit. Okay, so I'm required to take a certain number of hours, right, each year to keep the license, right? And I get to choose those classes pretty much within reason because I'm already a licensed foster parent. So I can take one of them. That's what I was referring to. You agreed to certain conditions. Yeah, the problem is that these hours for this class don't go to those requirements and they were done because of the requirement of speech, not as part of the standard curriculum that I'm just like number of hours, like an attorney, right? So I have to go take 20 hours of CLEs, right? And if someone says, hey, you have to, in order to stay an attorney, you know, and you made this, you know, what we deem as an inappropriate, you inappropriately used gay as a gay person. Now you have to take this extra class that actually doesn't count towards any of your other licensing requirements. So then you have to show or allege that your speech was a substantial and motivating factor in the requirement that you take the class. Yes, okay. So that may be, that's part of my problem is I don't know what is the missing piece because in my mind, I've said that in my complaint as it exists. But that is the allegation. So I think what the problem is here is that we have all these state records that clearly indicate that your comments in court that day was likely not a substantial and motivating factor. It's a, the case is at a really strange posture with this evidence that we're looking at. Because we don't have all the evidence. Well, what we do know is that your comment in court was how many months before the child was removed and how many months before you were asked to take the class? So she began retaliating by putting the adoption on hold. Well, what was the evidence of that? I have it, I can submit it. Okay, we've taken you over maybe. Yes, maybe the agency can clarify some of this for us. So Mr. Michalowski, you may proceed. Thank you. And are you able to hear me okay? I had some IT issues. Yes, we can hear you. Great, well, thank you, your honors, Jeff Michalowski for the County of San Diego. And I think that what this case really shows is that sometimes foster relationships just don't work out. And we've now had three courts look at this issue, the juvenile court, the fourth district court of appeal, and that was a unanimous decision and the district court. And each of those courts found that the removal was justified, there were no violations of law. And I do think it's important to note as well that these courts were very careful to say they weren't passing judgment on the plaintiffs here. That's not what this is about. It's not a case of physical abuse. What this is, is just a case where a teenager didn't feel like he was in the right home. Can I tell that from this record? That's part of my problem. I mean, it seems to me intuitively obvious that because when we get to the end of the process, everybody agrees that the teenager wants to be someplace else, he should, that he didn't want to be in the home. But where do I look in this record to find that? I think the best place, your honor, is in the judicially noticed documents in which plaintiffs submitted a non, I think that it was titled a non-objection to removal. And it was a very detailed accounting of what happened there. Those are confidential, so I can't discuss the details here. But those documents are judicially noticed and it shows that not only the teenager wanted out of the home, but that plaintiffs actually agreed to that and so they don't object to that. And by the way, this is an aside and it bears no and influence on the outcome of your case. Why in the world did the county remove? Why did the county? It's in state court, you're the state or an agency of the state. And part of the issue is what happened in the state court proceedings. And you schlep it over to the district court to ask the district court to try to figure all that out. Oh, you mean with respect to removal to federal court in the first instance? Yeah, I mean, I know what you're entitled to. I know she raised constitutional claims. I'm just, you don't have to answer this. I just, it's a continual frustration on my part. The state or county removes proceedings and argues that we don't really understand what the state courts were doing. And of course the state courts would understand what was happening in this case if you simply left it there. Just as advice for a future case. Thank you, your honor. I understand the concern. So in terms of the teenager, saying that he didn't wanna be in this home anymore. And I think the record's undisputed. I think there may have actually been a concession during commentary a moment ago. That's really an immovable object. And that's why I think leave to amend would be particularly inappropriate in this case. And that's an odd place to start, but I do wanna start, I think, with leave to amend  there should be no leave to amend in this case. Number one, we have Rooker Feldman, right? Plaintiff has to accept the state court rulings, including the ruling that the removal was permissible. That can't be challenged. Did the juvenile court ever address the initial removal or just the ultimate final removal? The record is silent, your honor. I think if you look at the actual order, the juvenile court does authorize the removal and notes that the teenager supports it. And when they talk about that removal, they're talking about the noticed, the second removal, not the initial removal. So why isn't the juvenile court order consistent, or at least not inconsistent with the following? Maybe you were discriminated against at the beginning of this process, but now that we're a year or six months or whatever down the road, it's clear the kid doesn't wanna go back. And since he doesn't wanna go back, it's in his best interest not to go back because he can't be adopted by anybody who he doesn't want to adopt him. So let's move him along to another home where he might be adopted. See, I'm just not sure that the juvenile court proceedings litigated the claims Ms. Kelly is now making. They surely established it was in the best interest of the child not to be in another home. But how did they litigate her constitutional claims? Well, your honor, at issue was whether the removal was appropriate. And in the background, we have this family code statute that says the child has an absolute right not to be adopted. So when a child voices that interest, the best thing a social worker can do is get this kid or this teenager or young person into a home that has realistic prospects of becoming a forever home. And so- Okay, so we're making a distinction. There's a distinction. Okay, so how do you respond to the claims about the initial removal when the social worker took the teenager to the parent's house before the notice of hearing issue and before the decision to actually remove him and put him with another family was made? Yes, so the confidential documents show the reason that precipitated that. And I'll refer the court to those, the issue that occurred on Father's Day. The social worker is authorized under the Welfare and Institutions Code. This is section 16501.01A. It's authorized to arrange respite. And what respite is, is not a formal removal. It's placing the child in a temporary home until those formal proceedings continue. So the first night, I believe, the teenager at the social worker's suggestion was just told, maybe go stay at your friend's house tonight. And it wasn't until after that that the social worker arranged for respite care. Notice and an opportunity to object was provided very promptly. The hearing occurred within several weeks after that. Plaintiffs appeared. Would you give me the section number for the respite care again? There's Welfare and Institutions Code 16501.01A that authorizes respite. And does the confidential record, I mean, this seems intuitively obvious, but I just want to see if there's anything else in the record about it. Obviously the social worker didn't, she came in response to the child, correct? I'm sorry, what was the question? Can I tell from this record, whether on Father's Day, the social worker's visit with the child was in response to a communication from him? I believe that's directly in the first amended complaint, actually. I think it is. I think it is, okay. So he calls her and then they arrive at this respite arrangement. Correct, Your Honor. Can I tell from the record what he told her? I know that Ms. Kelly in some declarations says, he told me he told her, but can I tell from the record what he told her? Not in, I mean, he doesn't speak directly into the record. Everything is channeled through what plaintiffs communicated with and conceded in the confidential records and also what the social worker represented and what the Court of Appeal in the footnote that you noted. We've looked at the record and we can't find evidence, but it may not be that the Court of Appeals, Court of Appeal was tasked to find that evidence. But let me ask you to switch now. So let's assume that the due process claims are addressed by your absolute right to live up to the child's preference. What about the retaliation claim? How do you respond to the retaliation claim? Well, I think the devil's in the details. And I think you have to look really closely at what the allegations of the complaint are because the alleged complaint to the court, it's not very clear what it is. It appears to be- And let's assume I find implausible that all this occurred because of a comment in court that adoptions are going slow. Having handled adoptions, those comments occur. I think it's implausible. Let's take, focus on the Ms. Kelly's refusal to stop speaking at her home or whatever. Why doesn't she at least state a claim that the future slowdown or future refusal to deal with them on foster care is in retaliation for those statements? Well, we have to look at the allegations that are actually in the complaint, not the comments made in the briefs or an oral argument. And what the complaint says, I direct the court to the first amendment complaint, paragraph 28, is that there's really two types of retaliation alleged in the complaint. Number one, the social worker created a quote, fictional prerequisite to finalizing the adoption. The complaint never says what that fictional prerequisite is. So that's conclusory and I think it falls far short. Let's forget about that one for a moment because we all agree that they can't finalize the adoption without the consent of the child. And the child, I think this record makes pretty clear, wasn't gonna consent to the adoption. So move on to her contention that, well, we'd like to have other foster children and you won't deal with us now. How do we deal with that? Well, Your Honor, there's no right to an adoption. And if you look at the allegations of the complaint, all it says is that they've refused us adoption. That's not how adoptions or foster relationships work. I was gonna say, refused adoptions or foster- I think it's refused. Refused placements. Placements. But this is quite a process. The foster parents need to initiate the process, fill out the paperwork, submit to interviews and a whole bunch of other procedures. After that, the defendants are actually required by statute to place each child in protective custody in the most family-like setting that will meet their individual needs. And it's not always gonna be a good fit. It deals with the idiosyncrasies of particular parents and particular children. It could be that a prospective parent wants a baby and there's no babies available at this time. This happens all the time. Finding a good match is difficult. It very often takes time. So a mere allegation that there haven't been any ineffective placements, that's not unusual. That happens a lot of times. Okay, so let me- In this case, the next argument would be, yes, everything you just said is correct. That's a pretext here for actually either retaliation or discrimination. On the basis that it's a gay couple, it wants to speak openly about being gay. I mean, that's what the next argument would be. That actually, I guess, that the substantial motivating factor is that they're gay. Not that they spelled this out really well in the complaint, but I'm sensing that's their direction. There would need to be, Your Honor, plausible factual allegations to support that. And what we see from the record is a complete absence of any animus towards plaintiffs based on sexual orientation or being a same-sex couple. And in fact, what we see is support from the outset. The county knew from the outset that plaintiffs were a same-sex couple. That wasn't a secret, but they placed a child with plaintiffs in 2015. They placed another child, the teenager that's at issue in this case, in 2017. Well, I agree with you. That's why I find it entirely implausible that the refusal to place is because of sexual orientation or gender. She's making another argument. I'm not saying she's not making that argument. She is making that argument. I don't find it very compelling. But her argument is, I'm being punished for complaining about you're taking away the child and refusing to abide by your instructions, whatever they were given during, at the time of removing the child to respite. How do you respond to that, if you would? So there's an additional point that I haven't discussed yet, which is that part of the First Amendment retaliation test is whether a certain conduct would chill a parent of ordinary firmness. So would it chill a parent to be asked to attend a parenting class? I think that that's not plausible. That's not something that would have a chilling effect that the First Amendment is looking out for here. And so I think- In that respect, can I ask you again? I'm sorry to interrupt, but this is a messy record. Some of it's under seal, some of it's not. Um, the child, am I correct in reading this record that the child was never returned to the home after Father's Day? That they had some contact with him because they brought him to school that week, but he never was returned to the home? Correct, Your Honor. Okay, because part of the complaint is we're being deprived of the ability to speak in our own home of what we want to speak about. And I think if the child is not there, there's no deprivation of that, but I'm trying to find that fact. Yeah. One, I have just a few seconds left, but one, I think the easiest way to decide this case is based on qualified immunity. Because the court is correct, the record's a little bit unclear. Of course, it's plaintiff's burden, so the lack of clarity is certainly not something that should be weighed against the county. But qualified immunity here, it's a really powerful case for it to be faced with a teenager who says he doesn't want to be in the home, and they take action pursuant to a state statute that gives the teenager an absolute right, absolute veto power, and that prevents the state from compelling a teenager to be in a home that he doesn't want to be in. If there are no further questions, I'll submit, but I'm happy to fill. So procedurally, I don't know how we get to qualified immunity, because qualified immunity is an affirmative defense that you've not even filed an answer yet to assert that defense, and so I don't see how we can go off on that qualified immunity. I thought you were going to say the easiest way was Ricker-Feldman, given the extensive regulation here and that the state courts have spoken to most of these issues, if not all of them. I agree that Ricker-Feldman- Ricker-Feldman says we don't have jurisdiction. Right. But as qualified immunity, we have to, you know, although as a mayor of LA, it's appealing. I just procedurally don't know how to get there. Well, Your Honor, this is, you know, brought up on a 12B6 motion. It's very common for qualified immunity to be granted on a 12B6. There's no requirement of stating that in the answer. By filing the motion, you're effectively and making an assertion of qualified immunity in that motion, which the county did below. You're presuming that- Okay, all right. The district court never addressed it, though. Well, it might have. That's correct, Your Honor. Not that it needs to, necessarily. I have a final point that I'd like to make, if you can indulge me with that. As to leave to amend, there's a Ricker-Feldman problem. There's a qualified immunity problem. There's the immovable objects of the two-year-old teenager saying he doesn't want to be in the home, which is, you know, really resonates with that state statute that gives him absolute veto power. There's no protected liberty interest at issue. And I think, really importantly, the burden to obtain leave to amend, to show that the district court abused its discretion in denying it, that falls on plaintiffs to identify the specific facts that they would add to their complaint that would state a cause of action. And the time to do that is in the district court. That didn't happen, it didn't happen in the briefs, and it's certainly not something that can be cured at oral army. Thank you, Your Honor. All right, thank you, counsel. Ms. Kelly, you went well over, but I will give you two minutes to wrap up. Thank you so much, I really appreciate that. So I think part of the confusion, just really fast, is that these rights in this case was never brought in state court. That was juvenile dependency actions. They couldn't have remedied any constitutional violations or any of the state cause of actions that accompanied the complaint. These are all completely new issues. As far as the rationale and some of the record, yes, that lies in the juvenile dependency records, but this was never a state court case, too. But it is in a small respect, and this is, you're asking for damages, correct? Yes. Okay, you can't get damages for removal of the child because that was held to be appropriate by the state court. Okay. So I'm taking you're seeking damages for being forced to go to a class and damages because you haven't been given another placement. Yes. What else are you seeking damages for? So, yeah, just discrimination and retaliation. Those are words. Tell me your injury. So that I cannot have a family. I can't have a family. Wait, let me finish. The injuries that you allege are that you were forced to go to a class against your will and that the county won't make more placements with you. Is there any other injury that you suffered? I guess not, because those are the important ones. Okay, no, that's fair. I just want, because I don't think you can seek damages for removal of the child, given that the state proceeding found that that was appropriate. I'm fine with that. It's the actions afterwards, right? Retaliation for speech. Thank you, Justice. Another thing, I need to make this one point, and I promise it'll be fast. Respite. Let me explain what respite is. They keep justifying respite. Respite is my right. What they did was the equivalent of taking the child to a hotel, charging it to my credit card, submitting an expense report to the county to pay off the credit card. This was my account. They don't have a right to put the child in respite. That makes no sense. The respite is to give me reprieve, not the child, not the county. Their whole job is taking children and removing them and moving them around. We never did that. Are you claiming damages for having to pay the cost of respite? I haven't been billed for it, but I'm concerned that I could be billed for it at some future stage. But you don't have any injury based on that. Right, but they had to commit fraud in order to effectuate the removal. All right. Thank you, Ms. Kelly. Kelly versus San Diego County Health and Human Services Agency is submitted. And the next case is 20 minutes. Precisely, shall we take a five minute recess? Yes, this court will be in recess for five minutes.
judges: WARDLAW, HURWITZ, Bough